# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| JOHN DANIEL CROWE | CIVIL ACTION NO. 06-0488 |
| VS. | SECTION P |
| MARK SHUMATE, ET AL. | JUDGE JAMES |
| | MAGISTRATE JUDGE HAYES |

## REPORT AND RECOMMENDATION

Before the court is a civil rights complaint (42 U.S.C. §1983) filed *in forma pauperis* by *pro se* plaintiff John Daniel Crowe on March 20, 2006. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC). He is presently incarcerated at the Washington Correctional Institute, Angie, Louisiana [doc. 5], but when he filed the complaint he was incarcerated at either the East Carroll Detention Center (ECDC) in Lake Providence, Louisiana [see doc. 1-1, Paragraph II], or the Forcht-Wade Correctional Center (FWCC) in Keithville, Louisiana. [dee doc. 1-1, pp. 10-11] He complains that he was denied appropriate medical treatment for his pre-existing back injury, for additional injuries sustained while he was incarcerated at the ECDC, and for injuries he sustained as a result of spider bites. He names East Carroll Parish Sheriff Mark Shumate, ECDC Wardens Alvin Jones and John Gunter, and the ECDC Medical Staff, including Dr. Bailey and Duwayne Fountain as his defendants. He seeks a transfer to an LDOC facility and compensatory damages of $2 million for "mental anguish, neglect, pain and suffering, past, present and future..." [doc. 1-1, pp. 7 and 9] For the following reasons, it is recommended that plaintiff's complaint be **DISMISSED WITH**

1

**PREJUDICE.**

## STATEMENT OF THE CASE

In March 2004 plaintiff had a pre-existing back injury and had been prescribed Vicodin and Soma[1] for pain; he also received a medical assignment to a bottom bunk.

When he arrived at ECDC in March 2004, the medical staff and Dr. Bailey refused to give plaintiff the medication described above and instead prescribed Elavil.[2] Bailey did however order that plaintiff be assigned to a bottom bunk. Plaintiff complained that the Elavil did not relieve his pain and instead made him sleepy, drained, and moody. Plaintiff filed several grievances but received no response.

In February 2005 plaintiff was re-assigned to a top bunk. He reminded Lieutenant Gerald that he had been assigned a bottom bunk for medical reasons but Gerald ignored the medical assignment and threatened to mace plaintiff and send him to lock-down if he did not comply with his order.

Plaintiff reluctantly accepted the new top bunk assignment but experienced distress upon entering and exiting his bed. Plaintiff complained to Dr. Bailey who wrote another order directing the staff to give plaintiff a bottom bunk. Prison staff again ignored Dr. Bailey's order.

On April 7, 2005, plaintiff fell while exiting from the top bunk. He injured his back,

---

[1] Vicodin® is a drug containing acetaminophen and hydrocodone, a narcotic analgesic. This combination of drugs is used to relieve moderate to moderately severe pain. Soma® contains carisoprodol, a muscle relaxant. This drug is designed to relax muscles and relieve pain and discomfort caused by strains, sprains, and other muscle injuries. See Medline Plus, Medical Encyclopedia, A Service of the United States National Library of Medicine and the National Institutes of Health at http://www.nlm.nih.gov/ medlineplus/ encyclopedia.html

[2] Elavil® is a tricyclic antidepressant used to relieve mental depression. *id.*

neck, shoulder, knee, and elbow. Plaintiff was escorted to the medical department but Duwayne Fountain and Dr. Bailey refused to provide proper treatment. Plaintiff then filed a grievance on April 15 and another on May 2, 2005. He received no response from the prison administration, so he submitted a grievance to the LDOC. He complained that defendant Fountain had threatened to file a disciplinary report when plaintiff signed up for sick call; that Fountain had cursed at him and demanded that plaintiff leave his office; and, that Fountain had refused to provide appropriate treatment.

The LDOC contacted Warden Jones and advised him of plaintiff's grievance. Plaintiff was summoned to the warden's office and promised medical treatment in return for dropping the grievance. Nevertheless, although plaintiff was given x-ray examinations, he did not receive the proper treatment as promised.

On September 1, 2005, plaintiff submitted two grievances to the Warden but received no response. On October 1, 2005, plaintiff submitted another grievance to the LDOC.

Plaintiff submitted additional grievances to Warden Gunter; eventually Gunter promised to have plaintiff transferred to an LDOC medical facility.

In his original complaint plaintiff alleged that in July 2005 his feet were bitten by spiders. He claimed that he was refused appropriate medical treatment by Dr. Bailey, the Wardens, and Nurse Fountain. He claimed that his foot became infected because Dr. Bailey was treating him for boils and not a spider bite and because Fountain also refused to provide treatment.

Another employee of the medical department examined plaintiff's foot and referred him to Dr. Bailey. Dr. Bailey admitted plaintiff to a hospital and surgery was scheduled. Plaintiff remained in the hospital for four days following surgery. Plaintiff's feet healed but he still

complains of numbness and tingling. Plaintiff wrote several grievances but received no responses. He also submitted a grievance to LDOC but received no response. He claims that he is unable to provide copies of these grievances because all of his legal documents were lost or destroyed by ECPDC staff.

Plaintiff was eventually transferred to Forcht-Wade Corrections Center, and then to his present place of confinement, the Washington Correctional Institute in Angie.

On May 15, 2006, the undersigned ordered plaintiff to amend his complaint to provide additional information necessary to complete the initial review of his claims. [doc. 6] On May 30, 2006, plaintiff filed an amended complaint, but that amendment did not address the specific concerns raised in the May 15, 2006, order. [doc. 7] Therefore, on June 21, 2006, the undersigned again ordered plaintiff to amend to provide specific details about his claims; plaintiff was given thirty days, or until July 21, 2006, within which to amend his complaint. [doc. 8] Plaintiff has not complied with the order.

## LAW AND ANALYSIS

*1. Frivolity Review*

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact, *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118

4

L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but, they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). In addition, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff's complaint and his amended complaint have been reviewed; plaintiff has been afforded a second opportunity to amend his complaint to provide additional facts; however, plaintiff has failed or refused to avail himself of that opportunity.

Accepting all of plaintiff's allegations as true, the court concludes, for the reasons stated

hereinafter, that he has failed to state a claim for which relief may be granted and accordingly, recommends dismissal of the complaint.

## 2. *Supervisory Officials*

With the exception of Dr. Bailey and Duwayne Fountain, the remaining defendants appear to have been sued in their capacity as supervisory officials. Plaintiff suggests that these supervisory officials – Sheriff Shumate, Warden Jones, and Warden Gunter – are liable because of their positions of authority. Plaintiff claims that Sheriff Shumate failed to adequately train his jail staff and that he restricted medical care in order to economize. [doc. 7, p. 2] He claimed that Wardens Jones and Gunter refused to respond to his administrative remedies grievances. [id.] Finally, he claimed that these defendants were responsible for getting him the medical treatment he deserved.

It is well settled that supervisory officials may not be held liable under §1983 under the doctrine of *respondeat superior*. *Mouille v. City of Live Oak*, 977 F.2d 924 (5th Cir.1992), *cert. denied*, 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 660 (1993); *Jennings v. Joshua Indep. Sch. Dist.*, 877 F.2d 313 (5th Cir.1989), *cert. denied*, 496 U.S. 935, 110 S.Ct. 3212, 110 L.Ed.2d 660 (1990).

To be liable under § 1983, a supervisory official must be personally involved in the act causing the alleged constitutional deprivation, or must have implemented a policy so deficient that the policy itself acts as a deprivation of constitutional rights. *Cronn v. Buffington*, 150 F.3d 538, 544 (5th Cir.1998).

Plaintiff fails to make sustainable allegations which would establish supervisory liability on the part of these supervisory officials. To establish the personal liability of these defendants

plaintiff must show that their personal action or inaction violated his civil rights. *Reimer v. Smith*, 663 F.2d 1316, 1322 n. 4 (5th Cir.1981). Plaintiff has alleged no facts to establish that these defendants were personally involved in the events that form the basis of his claims.

Plaintiff failed to allege that any of these defendants implemented a policy so deficient that the policy itself acted as a deprivation of constitutional rights. He alleges that the Sheriff's policy toward inmate medical care was "...restricted in order to save money..."; however, he offers no factual support for this conclusory allegation.

Finally, with regard to his contention that these defendants ignored his grievances, that claim is without a basis in law. The narrowing of prisoner due process protection announced in *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), leaves prisoners without a federally-protected right to have grievances investigated and resolved. Any right of that nature is grounded in state law or regulation and the mere failure of an official to follow state law or regulation, without more, does not violate constitutional minima. See *Taylor v. Cockrell*, 2004 WL 287339 at *1 (5th Cir. Feb.12, 2004) (not designated for publication) (holding that "claims that the defendants violated ... constitutional rights by failing to investigate ... grievances fall short of establishing a federal constitutional claim"). See also *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 138, 97 S.Ct. 2532, 53 L.Ed.2d 629 (Burger, C.J., concurring) (applauding the institution of grievance procedures by prisons but not suggesting that such procedures are constitutionally required); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996) ("[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994) ("[T]he constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily

7

established by a state."); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir.1993) (quotation omitted) (holding that a prison grievance procedure is not a substance right and "does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment"); and *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.1988) ("There is no legitimate claim of entitlement to a grievance procedure.").

Accordingly, plaintiff has failed to state a claim pursuant to § 1983 against Sheriff Shumate, Warden Jones, and Warden Gunter.

### *3. Medical Care*

At all times relevant to this analysis, plaintiff was a convicted prisoner. Therefore, his medical care claim arises under the Eighth Amendment's prohibition against cruel and unusual punishment. In order to show an Eighth Amendment violation in this context, plaintiff must show that the defendants were deliberately indifferent to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir.2001). Despite having been given the opportunity to do so, plaintiff has not made such a showing.

Deliberate indifference in the context of the failure to provide reasonable medical care to a prisoner means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur. *Id.* at 458-59. "[T]he failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001). Moreover, "deliberate indifference cannot be inferred merely

8

from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459. "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999).

The fact that a plaintiff disagrees with what medical care is appropriate does not state a claim of deliberate indifference to serious medical needs. See *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997). Plaintiff's complaints indicate at best, a disagreement with the treatment plans prescribed by Dr. Bailey, Nurse Fountain, and the remaining unnamed members of the prison's medical staff. As shown above, upon his arrival at ECDC in March 2004, plaintiff disagreed with Dr. Bailey's choice of an appropriate pain medication. [doc. 1-1, p. 5] He also complained that Fountain and Bailey refused to provide "<u>proper</u> medical treatment" following the April 7, 2005 incident. [*id*., p. 6] He accused Fountain of failing to provide "<u>proper</u>" or "<u>appropriate</u>" medical treatment thereafter. [*id*.] He likewise complained of the defendants' refusal to provide "<u>proper</u>" medical treatment with regard to his spider bites. [*id*., p. 8] Plaintiff has not alleged facts sufficient to establish deliberate indifference in this context. According to the complaint, plaintiff was treated for each injury he sustained. He does not contend that his injuries were ignored, instead, he complains that the treatment provided was inappropriate. In short, he disagreed with the treatment choices made by the defendants, and that allegation is insufficient to state a claim for relief. *Norton v. Dimazana*, 122 F.3d at 292 (5th Cir.1997).

Otherwise, it is clear that plaintiff has failed to demonstrate that Dr. Bailey and Nurse Fountain were aware of facts from which an inference of substantial risk of serious harm could be drawn; nor has he shown that these defendants actually drew such an inference. Finally, he has

9

not shown that the defendants' responses to plaintiff's complaints indicated their subjective desire that any harm befall him. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 458-459 (5th Cir.2001).

Whether or not these defendants "should have perceived" a risk of harm to plaintiff, but did not, is of no moment since "...the failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999). Plaintiff's complaint, taken as true, does not rise to this required level of indifference.

In short, plaintiff's claims concerning the denial of adequate medical care are frivolous and dismissal on that basis is recommended.

### *4. Insults and/or Threats*

To the extent that plaintiff seeks compensation for the allegedly insulting and threatening behavior of Nurse Fountain and Dr. Bailey, his claim fares no better. Claims of verbal abuse and harassment, while regrettable, are not actionable under § 1983. *Bender v. Brumley*, 1 F.3d 271, 274 n. 4 (5th Cir.1993).

### *5. Exhaustion of Administrative Remedies*

Finally, plaintiff's allegations concerning exhaustion of available administrative remedies are ambiguous or contradictory at best. He claims to have exhausted administrative remedies up to the level of the Secretary of the Department of Public Safety and Corrections, but claims that

he is unable to provide documentary proof of this claim. He was ordered to provide "... a detailed statement of the date upon which he claims to have filed each grievance; the person to whom the grievance was directed; and the result and the date of the result..." [doc. 8] He has not complied with this order.

The Civil Rights of Institutionalized Persons Act, 42 U.S.C. §1997e(a), which makes the exhaustion requirement mandatory in prison conditions cases, provides as follows:

> (a) Applicability of Administrative Remedies – <u>No action shall be brought</u> with respect to prison conditions under section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility <u>until such administrative remedies as are available are exhausted</u>. (Emphasis supplied)

Under current law, plaintiff must exhaust the administrative remedy procedure before proceeding herein. The statute provides for no exceptions. The jurisprudence interpreting the statute clearly mandates completion of the administrative remedies process prior to filing suit. See *Wendell v. Asher*, 162 F.3d 887, 890-91 (5th Cir. 1998) (§1997e(a) "plainly requires that administrative remedies be exhausted <u>before</u> the filing of a §1983 suit, rather than while the action is pending ... [t]o hold otherwise would encourage premature filing by potential litigants, thus undermining Congress' purpose in passing the PLRA, which was to provide the federal courts some relief from frivolous prisoner litigation."); See also *Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998) (dismissal for failing to exhaust administrative remedies is justified "as a deterrent to premature filing by...other potential litigants, thus serving the Congressional purpose of providing relief from frivolous prisoner litigation..." and "[b]y choosing to file and pursue his suit prior to exhausting administrative remedies as required, [the plaintiff] sought

relief to which he was not entitled – that is, federal court intervention in prison affairs prior to the prison having had the opportunity to address the complaint within its grievance procedures.") Because plaintiff has failed to comply with previous orders, it is impossible to determine whether or not he fully exhausted administrative remedies with respect to each of the claims he advances herein.

*6. Conclusion*

Since it is apparent that plaintiff's claims are frivolous, dismissal on that basis is recommended. Should plaintiff object to this Report and Recommendation as provided below, he should include with his objection proof that he fully exhausted administrative remedies <u>prior</u> to filing suit.

Accordingly,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal**

conclusions accepted by the District Court, except upon grounds of plain error. See

*Douglass v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

**THUS DONE AND SIGNED** in Chambers at Monroe, Louisiana, this 29th day of August, 2006.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE